Thank you. Thank you, Your Honor. Good morning. Sean Flynn on behalf of the United States. The undisputed facts presented to the District Court in connection with the defendant's motion to suppress below demonstrate that Deputy Fellman's traffic stop on an August 2007 evening in Sacramento was compliant with the Fourth Amendment. The District Court held the stop invalid and consequently- Tell me if I have the facts right. As I remember this case, he had a sticker on his plate that said he was fine. He had a license plate number. The policeman ran the license plate number, and it said registration in progress, which meant that the sticker was not fine if what the computer told him in the police car was true. And that's why he stopped him. Is that right? That's right, Your Honor. There are three facts that are undisputed. Did I get those facts right? You did, Your Honor. There was an expired alert. The officer ran the license plate through his mobile data terminal on board the car, which is connected directly into the Department of Motor Vehicles. He runs the plate. It comes back registration valid from February 8th, 06 to February 8th, 07, indicating that at that moment- And what was the date that the policeman was doing this? August of the same year. So it was expired at that moment and had been for six months. A little further down on the screen, the notation application in process comes up, indicating that some application was in process but not complete at that moment. Well, they didn't know it was complete. And it said he was to contact the DMV. He didn't do that, did he? Well, Your Honor, it was 10 o'clock at night. The DMV wasn't open. The reality is if you go with the theory that the officer can rely upon his experience, he may say, well, you know, my experience is that whenever I stop somebody, I can usually find something wrong. Doesn't that give him a phishing license to stop everybody? No, Your Honor. In this particular instance, the DMV had indicated that the registration was expired. The law is that he just has to have some minimal objective justification for making the stop, traffic or otherwise. And that standard is something considerably less, as the Supreme Court has stated, than a preponderance standard. Okay. But correct me if I'm wrong, counsel. What my notes indicate is that what the MDT said was 8807, which was well past the expiration date, app in process, contact DMV Sacramento. So the registration would have been invalid as of February 8th, 07, or February 9th, 07. Here you are six months later. It says there's something going on. He sees that there is a valid sticker on the back of the license. And his explanation is, well, my experience has been that a lot of these are phony. People just take them off. Isn't that basically what it boils down to, is he says that's my excuse for this? Well, Your Honor, he did say that in his experience, it's not uncommon for him to find one or two vehicles per week that have phony registration stickers. But that is not the only facts he was relying on. So you're saying that for purposes of our analysis, you do not want us to take into account his experience, if you will, that he has found that sometimes these are phony stickers. Is that what you're telling us? Of course I want. That was one of the main errors of the court below. They gave absolutely no weight to the, he gave absolutely no weight to the uncontested four-page declaration of deputy felon. Counsel, do you even need it? Do I even need it, Your Honor? That's right. No, I don't, Your Honor. The fact, we don't even, the facts, even to a layman, even to the average citizen, when you're presented with an expired alert. What are the, how fast is the policeman driving these that way? Your Honor, I don't believe that's in the record. I believe they were in a high-traffic zone. They were in downtown, in the city of Sacramento. Downtown? They weren't on a highway. They were in the corner of Bradshaw Road. What happens? The policeman sees a car in front of him, he wonders about, and he types in the six digits of the license plate number? That's right, Your Honor. And in fact, to show, I mean, at the time he, at the time of the stop, he, there was no evidence to suggest that he was acting in any other manner other than in good faith reliance on. His good faith doesn't matter under Wren, so who cares? He also subsequently called dispatch, had his dispatcher. Could you wait just a minute? I was leading up to a different question. Yes, Your Honor. What I want to know is what day of the week and what time of day was it? I believe it was a Friday night, Your Honor, and I believe it was 10.20 p.m. It was. It was 10.21 p.m. Still working at the DMV Friday night at 10 p.m.? No, Your Honor. And to my knowledge, there's no hotline that he could call or anything like that. There's no man. Registration hotline. I don't believe there is one, Your Honor. Your Honor, the district court's. That's what I wanted to know. Thank you, Your Honor. The district court's opinion, they found, he found the facts to be unambiguous and capable and consequently that there was no reasonable suspicion because the facts were, quote, consistent with the truth, that there was no, that there actually was no, that the registration was actually valid. This sort of analysis in hindsight is not the way the reasonable suspicion analysis is intended to work. At the time of the stop, he had been presented with conflicting, ambiguous facts. He got a computer printout that's saying it's expired. You might notice that the barrage of questions has stopped, and I sort of suspect we're going to need you for a rebuttal. Thank you, Your Honor. In that case, I will reserve the rest of my time. Thank you. Thanks. May it please the Court, Anne McClintock, the Federal Defender's Office, on behalf of Gerald Brown. Counsel, I have some questions for you. Certainly. I know under Wren that good faith doesn't matter. It may be that the police suspected something. It may be that it was a pretext. It just doesn't matter under Wren, so I don't care about it. All I care about is whether he had reasonable suspicion. As far as I can tell under our case law, such as Miguel, among others, and I think our vizu, it doesn't matter if they're right, it doesn't matter whether something else could have ruled it out, it doesn't matter whether they explored everything. All that matters is reasonable suspicion. Am I right so far in the law? The only thing I'd add, it has to be individualized. Yes. It's a particularized reasonable suspicion to believe that there's something amiss criminally with this car. Yes, you're certainly correct on that. Now, what I wonder is, policeman's driving in city traffic, 10 o'clock Friday night, he sees a sticker and gets a computer message from the DMV, don't match up. Why isn't that all by itself? Nothing more, no further investigation, nothing can be pretextual. Why isn't that reasonable suspicion under our vizu and our decision in Miguel? I think if the factual discussion that Judge Smits had... We're good friends, right? That first name sounds like a lie. I think what he touched on is the answer to the question. If there had not been two days before, on the officer's display, an indication that two days before an application, it says app and process. If that wasn't there, if all you had was a registration period that was expired and you had valid plates, and that was it. Let me ask you about that. I recently had app and process on my own registration. I guess a lot of people do. Mine, fortunately, was before the date and I didn't get a ticket. But what it meant was I'd gone and gotten my emissions inspection, but I had not yet gotten on the Alaska DMV website and typed in the stuff I have to type in and given them my credit card number. So I had not registered. App and process means it's not done yet. Well, that's actually what we don't know. And my position in this case is this is a government's burden to put the record, make the facts clear about what app and process is. I don't understand why it's the government's burden to prove anything there. So warrantless stuff. So the burden is on the government to prove this reasonable, articulable, individualized suspicion that something's amiss. They have to show reasonable suspicion. But I don't see why they have to show that what app and process means. For one thing, it's kind of obvious. It means that something, but not everything, has been done on the application. Not in a California DMV context. Nothing is terribly obvious. I mean, there is there are two aspects here. One is that we know from the facts of this case, from the actual registration certificate that was put in record and from the judge's finding, that app and process did not mean that the application was not complete and the registration was invalid as of two days before. As a matter of fact, we know in this case that it was. That August 8th, he got a valid registration. His facts were valid. Mr. Stelle, did we ever find out, is there anything in the record to show why the computer told the policeman something that was incorrect? No. And I think that's what part of the burden of proof. Okay. So what we know is that the policeman saw that an application's been made but not completed. Well, it's the second half of the sentence that I disagree with. I don't think the record demonstrates and the government's got the burden that app and process means necessarily that. So your case really does turn on the proposition that when a policeman sees that the application for registration's in process, he has to follow up before he can stop the car. Right. And there are two factual points I want to follow up on. Why should he have to follow up? It seems to me, first of all, impractical. You can't call a DMV 10 o'clock Friday night unless you want to be on hold until Monday. I agree with that. It's not in the record, but I did talk to one of my investigators about what's available at DMV and there is, she's called them at 11 o'clock at night any day of the week. We also know from the record, because you're smiling at me. So just to be sure I understand, you are agreeing that the DMV has no one on staff to answer a policeman's call at that time? I think the record does not tell us the answer one way or the other. The government's position is no, there isn't. From my little extra record investigation, yes, there is. That there is a DMV, there's a law enforcement desk, phone number. Wow. I don't know what it is. That's kind of interesting. Do you have anything in the record about it? No, I'm saying it's not in the record. But nor is his position that there is nobody available in the record. What is in the record, though, is. My next question about the call before we move on to the next thing is, I don't like to dial my cell phone in a car because it's hard to avoid hitting people while you're fooling with the cell phone. It's also illegal in California, but. Pardon? It's also illegal in California while driving, yes. How would the policeman actually go about the mechanics of calling, of getting the additional information from DMV if he wanted to follow up? The same way that he did. Where we see this is in the exception record, the attachment to the CLES, the Criminal Law Enforcement Database printout. They actually did run at 11 o'clock, and this is on page ER 57, I believe, that either he or the dispatcher. It's not clear because these things actually what we have in the record are not screenshots, but they're a search of the law enforcement database for queries that were made regarding either Mr. Brown's name, his address, his vehicle license plate number. So these are the kind of the queries that were made and the results. But we do know that someone. ER 67 is the title page. Where should I look? ER 57? 57. I'm sorry. And at the top, an inquiry made at 1024, and if you continue, I'm sorry, it's a couple pages later. There was a more detailed inquiry made on 59 and 60 regarding the state, I believe, of his. It looks from the result of his driver's license, but it's at 2323, so it's at 11 o'clock at night or 1123 p.m. So there's a lot of this information that we know from or we can deduce from the record of what's available that was available online just like he got information. But the real question is, is what happens when the record doesn't show what's turnaround time for DMV? I mean, DMV has to keep all sorts of records like app and process, I mean, a date of when the application was made. Our position is the government has the burden to prove as a factual matter that it was reasonable for the officer to believe that app and process means what you've been assuming, that it's still in production, that it's not completed. Just like the officer gave a declaration saying there's the smog checks, there's the proof of insurance. He presents it as a series, a temporal series almost. And we know from personal experience and from the judge's least implicit findings that all those things can be done at one moment. He can present it. Let me ask you this, counsel. I'm looking at the actual copy of the MDT report. And below the portion that we just were talking about is an entry that reads 03-16-207 NC delinquent notice extracted open COLL account. It looks like open collection account. If I'm reading that correctly, it suggests that this particular owner was previously delinquent in an earlier license or tag application. Is that correct? Am I reading that correctly? You know, I spent a good portion of a day trying to figure out what DMV acronyms mean and failed on this one. I think that given the date that it's March 16th of 2007, I think it's reasonable that the officer could assume and we would assume that there was some kind of outstanding fine, fee, something administrative. If that's right, if that's right. And under our case law, particularly our ISU, the officer has individual suspicion, individualized suspicion, the totality of the circumstances. He sees this reference to a previous collection action for failure to pay fees on time. Doesn't that also bear on the whether there was, in fact, reasonable suspicion in this case? Well, I think that's inconsistent with the information that he had about the registration being valid earlier. I may have the dates wrong. I think it's something that he can look at. But my fallback position and my real position is that we don't know really what it means. I mean, I can guess, you can guess, but it's the government's burden to put the evidence on and have the judge consider it. Well, actually, I'm not sure that that the government certainly has to show individualized suspicion. It certainly has to show that under the totality of the circumstances, there was a basis for reasonable suspicion. My question is, given the fact that they're given this officer's experience, which I agree could be a slippery slope, I'm worried about that part. But I see this next part, which to me suggests that the owner of this particular vehicle had had a previous problem with tags and had not paid on time. I don't know. I would disagree that that tells you it has to do with the tags. It certainly suggests there's some financial something. Somehow this particular owner had had a problem with the DMV. Given the officer's experience previously that sometimes these tags are not real, would that not be added to the quantum of data that could lead to reasonable suspicion? In theory, yes. It wasn't anything that. I mean, in actuality. Well, it wasn't anything that Officer Feldman mentioned in his declaration. It was on the report, so we can take notice of it, can we not? There are lots of things on the report that he doesn't mention that he relied on, that he read, that he understood, that we know. I don't even get how you could make practical use of the argument that you're providing now. It seems to me you're driving a car. The thing is moving. The guy in the other car is. To clarify, Mr. Brown was stopped at a light waiting to turn left when the officer came upon him. So everybody can do an hour's research at the traffic light, maybe read the Wall Street Journal. To the extent that whether it's moving or not moving makes any difference to you. I just want to clarify the record shows that it was stopped at a light waiting. My concern is they're on the road in vehicles that ideally when the light turns green will continue moving down the road in ordinary circumstances. And you want them to do an hour's research, try to interpret the DMV codes and all that. It seems to me that the only thing that would be practical is cop sees the car in front of him. And he has some kind of I don't know if it's an inarticulable gut feeling, which isn't enough for reasonable suspicion, or if he knows the guy and he wants to nail him or wants to check him out or what it is. It doesn't matter if it's pretextual under Wren. But all he needs is he sees that the sticker says it's good, punches in the six digit license plate number on his in-car computer terminal and it says something other than it's good. He's got him. He can stop him. And I don't see why he'd have time for anything else. That's the factual thing that I disagree with. I don't think you listened to the last half of my question because you'd already started talking. It seems to me he doesn't have time for anything else. Well, if I agree that if it said gave us the valid registration period that is expired and he sees valid stickers and that's it, then I agree with you that he had a reason to stop. I disagree when there's a two-day-old application and process contact DMV. I think that gives that negates the reasonable reason to stop. I'm not saying I hope this license plate stays red for a long time while I contact the DMV. He can follow him. He can do whatever if he's got other concerns about it. I mean, there's nothing to stop him. I know my time is well over, but there's nothing to stop him to continue his investigation. I hope when a policeman is making all these inquiries and holding up traffic, if I'm behind them, I have the Wall Street Journal handy, something to do. I mean, contacting the DMV, what is that, two, three, five lights worth? Well, no, he did it. One contact with DMV took about a second. A second contact he did through dispatch and it took less than a minute. We've got three or four responses. And then does he get this incomprehensible stuff that we just looked at in the excerpts of record? I don't know how it's displayed. What we have is the search results of what kind of query information was given and the information that was provided. I don't know whether it was given in a more easily read and digestible form or whether it was given in the form that we have it. Bottom line, though, counsel, I mean, I must confess, this is somewhat troubling in a way. On the other hand, reasonable suspicion is not a heightened situation. It's really not a high bar at all. You simply have to have some individualized suspicion that has something to back it up. And I guess following Judge Kleinfeld's comment, isn't that meant here given the facts of this case? I don't think it is because the application date is two days old. I think what this told the officer it was reasonable to assume the guy just got his registration updated and DMV hasn't updated it. You agree, do you not, that when it says app in process, that does not mean that there is a valid registration renewal? As a matter of fact, it did mean that a valid registration was renewed. I don't know what it means. I don't know what DMV uses it to mean. The record doesn't show us. It could be that DMV has to track when applications are made. I don't know. The officer told in his testimony what it meant to him, and it didn't mean it was completed. Is the officer's understanding based upon his experience irrelevant? No. It's not. So as long as we can take into account what the officer's experience has been as to what that means, then your client has a problem, doesn't he? Apparently so. Why is it a big deal stopping a guy for his registration? I mean, I would guess everybody in this courtroom has been stopped by a policeman, unless there are some non-drivers here. It's just part of what you expect when you're a driver. It's not a mark of being a bad criminal or something. Every now and then, a policeman stops you, maybe gives you a ticket. Well, the Fourth Amendment is what makes it a big deal, that we have a right to be free of such stops. As I recall, the Supreme Court said that the seriousness of the interference bears on the level of suspicion necessary for it. It is, and which is why we're dealing with a reasonable suspicion that some criminal activity is afoot. If this had not turned into a big dope case, it would be a nothing, wouldn't it? A policeman stops you, asks you about your registration, and you say, oh, I completed it on my computer last night. They must not be showing it. And he checks and, yep, great, you're on your way. No big deal. Well, it depends on what your tolerance is. There may be no remedy to it, but when I have been stopped for broken taillights that were not broken, it irritates me greatly. I have nothing to add, though. Thank you. Thank you, counsel. Counsel. I'd be happy to answer any further questions you may have. One point I would like to make was something that just came up that was said, is that it doesn't matter. The standard is that it doesn't matter if it was right, if the ultimate decision was right, whether or not the registration was actually valid. Well, if we look at the district court's decision on page 83 of the excerpt of record, that is exactly what came into its analysis and why it was so, why it was error, where it says, therefore, in spite of Deputy Feldman's invariable suspicion as to all vehicles with an app and process indicator, app and process did not mean that there was an invalid or expired registration in this particular case. That does not matter. The facts, as we have already said, were ambiguous as presented to the officer. He had conflicting information. And under the Supreme Court's decision, Illinois v. Wardlow, that is sufficient for the officer's entitlement to make a brief investigatory stat. We are not talking about probable cause. We are talking about a standard that is considerably less than preponderance of the evidence. Counsel, Ms. McClintock indicated that there's no discussion in the record about the second portion of the MDT. Is that your recollection as well, that is about the open collection account and so on? Do you remember? Your Honor, there – well, I can tell you that there wasn't – this is not an issue that's come up and has not been discussed in the – by either party throughout the course of this litigation. I would note that, I mean, the open – the delinquent notice was extracted in March of 2007. I mean, we're talking about five months later where there's an app and process that comes up on the agenda. But does that make any difference? It's obviously part of the record here. For purposes of our consideration, does the fact that what shows up on the DMV screen indicates that at least in the past that the owner of this vehicle has not paid one or more fees on time and a collection action was involved? Does that bear in any way on the individualized suspicion for purposes of reasonable suspicion? I think it does, Your Honor. I think in the end we would need that to prevail. The government – I understand your point that you don't think it's needed. I'm simply asking does that bear on it and can we take it into account in our review? Sure, Your Honor. I think you can. I mean, I think as Your Honor indicated earlier, it does indicate – at least suggests that there have been multiple infractions or numerous infractions with respect to this particular defendant with respect to his vehicle registration. I think that's something that can weigh in on the decision. I think importantly, in the declaration, the officer's declaration, the four pages, which, again, was not considered by the district court, even though the Supreme Court has said that an officer's training and experience must be given weight in the reasonable suspicion analysis, Deputy Feldman goes to some length to talk about how earlier in that same evening, August 10, 2007, he stopped a completely different motorist when presented with the exact same three set of facts, an expired alert a little bit further down, an application in process with respect to the registration, and then seemingly valid registration tags on the car. In that instance, which was not considered by the district court, he stopped the different motorist, determined that the registration in that instance was invalid. And how did he do that? How did he know that that one was invalid? He stopped him, Your Honor, and he went up and asked him. Did he contact the DMV? No, he didn't, Your Honor. Well, he did contact the – Your Honor, he does contact the DMV in each instance when he types in the license plate number into – No, I understand that. But when it says contact DMV, that's what you get from the DMV initially. It says to contact them. You talked about earlier in the evening he stopped somebody, and I remember that situation, but I don't remember, did he contact the DMV there? That's not in the record, Your Honor. We don't have the screen print of what exactly occurred on that prior instance. We just have his – We know how he found out that that particular tag was invalid. He approached the other vehicle, stopped him. And he looked at it and could see that it was on with bubble gum or something like that. Your Honor, I don't want to speculate. He just – it says in the record that he determined that it was invalid in that instance. But it doesn't say how he knew. It does not, Your Honor. And as I – well, I see we're out of time, Your Honor. Thank you very much. Thank you, counsel. United States v. Brown is submitted.
judges: Tg Nelson, Kleinfeld, M. Smith, Cjj